HOWARD *v.* SENOIA DUCK MILLS *et al.*

Under the evidence it was error to grant a nonsuit in this case.
FEBRUARY 14, 1913.

Action for conversion. Before Judge Freeman. Coweta superior court. September 7, 1911.

*Anderson, Felder, Rountree & Wilson,* for plaintiff.

*W. C. Wright* and *T. F. Rawls,* contra.

FISH, C. J. Howard brought an action for conversion of described machinery, against the Senoia Duck Mills, a corporation, and certain named persons alleged to be officials of the corporation, who, acting in its behalf, were alleged to have converted the property for the value of which the suit was instituted. On the trial there was evidence that plaintiff owned the machinery, and that it was in the possession of the defendant corporation when the action was commenced. Howard entered into a written contract with N. G. Long and T. J. Eady, two of the defendants, wherein he agreed to sell the machinery to them in consideration that they would deliver to him $24,000 of paid-up capital stock of the Senoia Duck Mills; Long and Eady agreeing that, in addition to the stock to be delivered by them to Howard, $30,000 in money should

be paid to the corporation by the subscribers for other stock. Under the agreement Howard was to deliver the machinery at Senoia, Georgia. According to the evidence he shipped it from Atlanta to Senoia, and took bills of lading for the same from the railroad company, in which he himself was named as consignee. There was evidence tending to show that the machinery was taken from the cars at Senoia by the employees of the Senoia Duck Mills under direction of some of the officials of that corporation, and under their superintendence, and installed in the mill of the defendant corporation; and that this was done without the knowledge or consent of Howard and against his express direction to the superintendent and foreman of the corporation, and while Howard was in possession of the bills of lading, no stock or other consideration having been paid to him. Before the machinery had been so unloaded, T. J. Eady, president of the T. J. Eady Investment Company, sent the following letter to the Lowry National Bank of Atlanta: "Enclosed please find following certificates of capital stock of Senoia Duck Mills: No. 36, 50 shares; 37, 50 shares; 38, 100 shares; 39, 30 shares; 40, 5 shares; 41, 5 shares; all issued in the name of T. J. Eady Investment Company and transferred in blank on back of each certificate. These certificates you are to deliver to George P. Howard, his heirs and assigns, when T. J. Eady and N. G. Long are released from any liability on their endorsement of note of ($12,000) twelve thousand dollars, due Catlin & Company April 4th, 1910. If said release is not obtained during the next six months or before judgment is obtained on said note, then stock is to be returned to T. J. Eady and N. G. Long." Howard testified, among other things, as follows: "At the time this stock was put up with the Lowry National Bank on June 4th, I had no knowledge then that the thirty thousand dollars in cash had not been paid in by the subscribers to the stock of the Senoia Duck Mills, and I had no knowledge at that time that the capital stock provided by the charter of one hundred thousand dollars had not been subscribed. I ascertained these facts a good while afterward, some several weeks afterward. I have never taken down that stock. It has never been transferred to me. I have never received any of it and have never seen it. I have never received a nickel compensation for my machinery; have never received one cent of it." Some three weeks after the date of the above letter to

the Lowry National Bank, T. J. Eady, as president of the T. J. Eady Investment Company, wrote the following letter to the same bank: "This is to show that we acknowledge that ten shares of the Senoia Duck Mills stock left with you to be delivered by you to George P. Howard when he pays the twelve-thousand dollar note to Catlin & Company that we are indorser on. If George P. Howard is willing for Glover & Company to take down ten shares of this stock, we are willing, as it appears that ten shares of the two hundred and forty shares are to go to Glover & Company, or Mr. Howard owes Glover this amount, so he claims, and we do not claim this ten shares." Upon the bottom of this letter was the following endorsement: "So far as I am concerned, the bank may deliver to Mr. Glover the ten shares of·stock referred to—this consent being given without prejudice to my rights as against Eady and Long or Eady Investment Company. 28th day of June, 1910. Geo. P. Howard." Howard testified that he did not owe Glover any of the stock delivered to the Lowry National Bank, nor was he indebted otherwise to Glover; that Glover thought somebody ought to give him "as a generous gift," some of the stock, as he had been negotiating the trade for both Long and Eady and Howard, but that Howard had paid him all he owed him for his services in this respect and otherwise. There was evidence as to the value of the machinery at the time of the alleged conversion. At the conclusion of the evidence in behalf of the plaintiff, only a small portion of which we have specifically referred to (there being nothing in the evidence not referred to that overcame the case as made by that we have stated), the court granted the following order: "I will grant an order nonsuiting this case. I take this view of it: When Mr. Howard accepted this stock from Eady Investment Company or from Eady and Long, he knew at the time that his machinery was unloaded. That is a ratification as far as it went. He has got the stock yet. There has been no surrender of it. I do not think he can keep the stock and get damages for the property at the same time. An order may be taken granting a nonsuit."

As will have been seen the learned trial judge was in error as to Howard's knowledge that his machinery had been unloaded at the time he accepted the stock deposited with the bank. According to the evidence, the stock was deposited in the bank on June 4th, 1910, and the machinery was not unloaded until sometime afterwards.

Moreover, it appeared that Howard never accepted the stock deposited in the bank in escrow, and therefore was never in a position to surrender it. Under the evidence the stock, at the institution of the suit and long prior thereto, was subject to the control of those who deposited it in bank. It is clear, therefore, that the evidence did not authorize the conclusion reached by the judge that Howard accepted the stock knowing at the time that his machinery had been unloaded, and that this was a ratification of the unloading of his machinery, and that he could not keep the stock and also recover damages for conversion. It follows that it was error to grant a nonsuit.

We do not mean to hold, however, that the plaintiff made a prima facie case against all of the defendants.

*Judgment reversed. All the Justices concur.*